IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JEFFREY K. DAVIS**  **PLAINTIFF**

VS.  **CIVIL ACTION NO.: 3:16-CV-300-LG-DAS**

**UNITED STATES MARSHALS SERVICE, An
Agency of the United States of America, and the
UNITED STATES DEPARTMENT of JUSTICE,
an Agency of the United States of America, both
by and through Loretta Lynch, the Attorney General
of the United States of America;
METROPOLITAN SECURITY SERVICES, INC.,
d/b/a WALDEN SECURITY; THOMAS WIGHT; and
DAVID SHAW**  **DEFENDANTS**

---

## AMENDED COMPLAINT
## (JURY TRIAL DEMANDED)

---

COMES NOW, Jeffrey K. (Jeff) Davis, the plaintiff in the above-styled and numbered cause, by and through counsel, and files his Amended Complaint against the above named defendants and would allege as follows:

1.

The Plaintiff, Jeffrey K. Davis, is a resident citizen of the State of Mississippi and resides at 108 Pine Pl., Batesville, MS 38606.



EXHIBIT A

2.

The Defendant, The United States Marshals Service, is an agent, agency and instrumentality of the United States of America and may be served with process by and through the Office of the Attorney General of the United States of America.

3.

The Defendant, the United States Department of Justice is an agent, agency and instrumentality of the United States of America and may be served with process by and through the Office of the Attorney General of the United States of America.

4.

Individual Federal Defendant Thomas Wight is an employee of the Defendant United States Marshals Service and acted in the capacity as the Acting Assistant Director of the Office of Judicial Security for purposes of the plaintiff's claims against him. He is sued in his individual and official capacities. Defendant Wight may be served with process by and through the United States and by service upon him personally.

5.

Individual Federal Defendant David Harlow is an employee of the Defendant United States Marshals Service and acted in the capacity as the Acting Director of the United Sates Marshals Service for purposes of the plaintiff's claims against him. He is sued in his individual and official capacities. Defendant Harlow may be served with process by and through the United States and by service upon him personally.

6.

The Defendant, Metropolitan Security Services, Inc,. is a Tennessee company, organized and doing business under the laws of the State of Tennessee and has a principal place of business at 100 East Tenth Street, Suite 400, Chattanooga, Tennessee. Metropolitan Security Services also does business under the trade name "Walden Security, Inc." as reflected in its filings with the Tennessee Secretary of State's Office. Metropolitan Security Services, Inc., which is registered as a foreign corporation doing business in the State of Mississippi, may be served through its registered agent, National Registered Agents, Inc., 645 Lakeland East Drive, Suite 101, Flowood, Ms. 39232. For all matters arising out of the allegations and circumstances presented in this Complaint, and as a matter of convenience in stating the allegations herein, Metropolitan Security Services, Inc. will be referred to by its trade name Walden Security.

7.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as the matters raised in this Complaint, including causes of action and associated remedies, arise under the United States Constitution and various federal laws and regulations relating to the rights of former federal employees and current employment applicants for positions of federal employment. Venue is proper in this Court as the causes of action alleged herein arose within this district and division. This Court has personal jurisdiction over the Defendants.

**Facts and Procedural History**

8.

The plaintiff, Jeff Davis, is a former federal employee of the United States Marshals Service, having served in various positions of management and leadership from 1998 through

3

January 2013. From 1998 until 2003, Davis was assigned as the Contracting Officer's Technical Representative with oversight responsibilities for the Court Security Officer's program in the United States District Court for the Northern District of Mississippi and received a top secret clearance for that position. In 2003, he was promoted to the newly created position of Judicial Security Inspector (JSI), a non-supervisory, non-management position, in which his oversight responsibilities over the CSO program were incorporated in the JSI job description. He served in that position until December 2009. Davis was later promoted to the position "Operation Supervisor" and transferred to the USMS Memphis Tennessee office, where he served until his retirement in January 2013. Davis maintained a top secret clearance until his retirement. Davis is also a former employee of Walden Security, having been employed in January 2016 in the position of District Supervisor under the subject contract as herein alleged and described.

9.

By way of material background, the court security officer's program is managed by the Judicial Services Division of the United States Marshal Service. The Office of Court Security is responsible for managing and developing a security program for all Federal judicial court facilities in accordance with 28 U.S.C. Section 566(a). Pursuant to that responsibility, the Marshal Service contracts with private security contractors which provide security and other personnel who are governed, in large part, by various federal regulations and the contracts issued by the Marshal Service. Employees of the private security contractors (court security officers or "CSO's") are deputized Special United States Marshals and provide security for federal court facilities in accordance with the terms of the awarded contracts. These contracts detail the conditions of employment, including initial job qualifications for CSO's, scope of duties,

management structure, firearms proficiency standards and fitness for duty qualifications, among other matters.

10.

A typical Court security contract also delineates a management structure which includes the designation of such positions as a (1) "court security officer" who functions as the "on the ground" security for all court facilities, (2) "lead court security officer" (or "LCSO") and (3) "District Supervisor" who manages the requirements of the contract and oversees and manages the security operations performed by CSO's and LCSO's on a court district – wide basis. The contract also contains a specific listing of District Supervisor "qualification standards" (Section C.4.2), including (1) being a U.S. citizen, (2) fluency in English, (3) three years law enforcement experience and five years of supervisory or managerial experience, and passing of a background investigation "at a level deemed necessary." Further, the federal regulations which are incorporated by reference in each court security contract typically requires each individual employed by the contractor as a CSO, LCSO or district supervisor to undergo a background investigation by the Office of Personnel Management (OPM) and, ultimately, a "suitability" determination by the Marshal Service' Office of Court Security (OCS) before employment may begin for the selected employee. "Suitability" determinations are undertaken in accordance with federal regulations, namely 5 CFR Section 731, which delineates certain criteria by which the Marshal Service may determine a candidate for employment as "unsuitable." The Office of Personnel Management determines candidate qualifications in accordance within the criteria contained in certain federal regulations. As for "suitability" determinations, the Marshal Service lacks discretion to determine that a candidate is "unsuitable" for employment on any grounds other than the criteria delineated in Section 731.

11.

While Davis was employed by the Marshall Service as a Judicial Security Officer, he met with Chief Deputy U.S. Marshal Kelly York in March 2004 in an effort to review the CSO program and in order to identify and correct particular contract violations. At this time, the Judicial Security Division of the USMS was making the correction of contract violations a priority issue through the District JSI's. Davis had several conversations with Assistant Director of Judicial Security, Cassondra Simmons, regarding various contract violations within the Northern Mississippi. Davis was advised that he had personal liability if the violations continued. Davis was also advised the violations could result in a lawsuit against the USMS by either the CSO's or the contracting company should they continue and, at the time, there had been a number of lawsuits claiming the USMS was a co-employer based on the USMS violating the CSO contract. Simmons and Chief Meli also advised Davis that the violations could be construed as a violation of federal laws because CSOs were essentially performing USMS personnel job responsibilities and therefore were wrongfully supplementing the USMS budget in violation of certain federal laws. Later that year, in follow up to these discussions, and pursuant to instructions received from Chief Bob Meli of the Marshal Service's Judicial Security Division, Davis wrote a letter to U.S. Marshal Larry Wagster (Northern District of Mississippi), informing him of certain violations of the CSO contract. This report was ignored by Wagster, infuriated York, and the contract violations continued unabated. York and others within the Marshal Service thereafter engaged in a series of retaliatory acts towards Davis.

12.

Davis's efforts to correct the CSO contract violations continued through 2006. Eventually, in spite of York's and Wagster's efforts to retaliate against Davis for his continuing complaints, the violations were stopped in December 2006.

13.

Thereafter, Davis was a witness in several administrative management reviews of the Northern District of Mississippi security operations conducted by the Director's Office of the USMS and Internal Affairs investigations of Complaints brought by the District Judges of the Northern District of Mississippi, including Judges Michael Mills and Neal Biggers, Jr., LCSO Wallace and the plaintiff against York. York, in turn retaliated against Davis in the form of negative performance evaluations and requesting internal affairs investigations of Davis for contrived performance failures. These actions prompted Davis to file grievances against York and all were resolved in Davis's favor. York also retaliated against LSCO Wallace by requesting internal affairs investigations against Wallace and all were resolved in Wallace's favor.

14.

In December 2009, Davis, whose job title until that time was "Judicial Security Inspector" (a non-supervisory, non-management position), received a promotion and was transferred to the Marshals Service's Western District of Tennessee Memphis office as the "Operation Supervisor," a management level position. Davis, who assumed the new position and transfer under protest, served as the Operation Supervisor in Memphis, with temporary assignments as the acting chief of the District for approximately 6 months, until his retirement in

January 2013. During the time Davis served in the Memphis office, he received "outstanding" annual appraisal ratings and annual performance awards.

15.

Approximately three years after Davis retired, he was approached by Marshals Service officials from the Northern District of Mississippi inquiring of Davis's interest in assuming the "District Supervisor" position under the court security officer services contract awarded to Walden Security on September 11, 2015. (Walden Contract, Exhibit "A" hereto) Davis was informed that the current District Supervisor, Roger Williams, was retiring. After discussions with Chief Deputy Woodfin who encouraged Davis to apply for the position, Davis made formal application on December 15, 2015. Several days later, Davis was contacted by Mark Mancuso of Walden Security and, after two interviews, Davis was offered the position on December 29, 2015 with a start date on January 5, 2016. (Walden Offer Letter, Exhibit "B" hereto) The Walden offer letter provided in part:

> Please accept this letter of employment as District Supervisor for the Northern District of Mississippi in the 5th Circuit of the United States Marshals Service contract with Walden Security. This offer is contingent upon approval from the USMS and your acceptance and signing of our covenant not to compete and dispute resolution agreement. We anticipate your start date to be Tuesday, January 5, 2016.

16.

Under the terms of the Walden Security contract, Walden Security was required to conduct a preliminary background investigation of each candidate who, if successful, would be certified by Walden Security to the Marshals Service as meeting all qualifications of the position. (Walden Security contract, Section C .5) The completed application would be submitted by Walden Security to the Marshals Service and the Office of Personnel Management for an additional background investigation. Once the OPM completed its background investigation, the

Office of Court Security would then review the OPM findings to determine if the applicant was "suitable" to perform under the contract in accordance with the suitability criteria set forth in 5 CFR Section 731. Section 731.202 delineates the criteria for making suitability determinations. This section provides as follows:

> (a) <u>General.</u> OPM, or an agency to which OPM has delegated authority, must base its suitability determinations on the presence or absence of one or more of the specific factors (charges) in paragraph (b) of this section.
> (b) <u>Specific factors.</u> In determining whether a person is suitable for federal employment, only the following factors will be considered a basis for finding a person unsuitable in taking a suitability action:
> (1) misconduct or negligence in employment;
> (2) criminal or dishonest conduct;
> (3) material, intentional false statement, or deception or fraud in examination or appointment;
> ……..
> (5) alcohol abuse, without evidence of substantial rehabilitation, of a nature and duration that suggests that the applicant or appointee would be prevented from performing the duties of the position in question, or would constitute a direct threat to the property or safety of the applicant or appointee or others;
> (6) illegal use of her contexts, drugs or other controlled substances, without evidence of substantial rehabilitation;
> ……….
> (8) any statutory or regulatory bar which prevents the lawful employment of the person involved in the position in question.

17.

In the event the Office of Court Security determines that an applicant was "unsuitable", the action is required to be reported to the Office of Personnel Management in accordance with Section 731.203. Under 5 CFR Section 731.302, the OPM must:

> "notify the applicant, appointee or employee… in writing of the proposed [suitability] action, the charges against the respondent and the availability of review, upon request, of

9

the materials relied upon. The notice will set forth the specific reasons for the proposed action and state that the respondent has the right to answer the notice in writing. The notice will further inform the respondent of the time limit for the answer as well as the address to which an answer must be made."

18.

Walden performed the required preliminary background investigation on Davis and submitted Davis' completed application to the USMS, certifying that Davis was qualified for the position. In early January 2016, Davis was informed by District Supervisor Roger Williams that Walden Security had received written notification from the Marshals Service that Davis was approved for the District Supervisor position. As a consequence, Davis began training on January 5, 2016 with Williams and, on January 7, 2016, Davis met with Williams, U.S. Marshal Irby, Chief Deputy Woodfin, Supervisor Quarles and JSI Lofton who also confirmed that Davis had been approved by the Marshals Service Office of Court Security. Davis was introduced to USMS personnel, District CSO's and local District Court personnel as the new District Supervisor. Davis was told by Chief Woodfin that he had conducted an investigation as to whether there was any negative information or feedback as to Davis being employed as the District Supervisor. Woodfin stated that he had talked to Chief Judge Aycock, District Court Clerk David Crews, Chief Probation Officer McKittrick, USMS personnel and District CSO's with no negative information being found. Woodfin stated that he reported his findings to the Office of Court Security. Later that day, Davis received a phone call from Mark Mancuso of Walden Security who informed Davis that Walden Security Vice President Dick Wong received notice from the Marshals Service that Davis was to be "suspended from the contract." Davis then contacted Chief Deputy Woodfin who informed Davis that it was his understanding that Davis had been approved as the District Supervisor by the Marshals Service's Office of Court Security

10

but that the Acting Director of the USMS, David Harlow, or the Office of General Counsel, informed Walden Security to "suspend" Davis from the contract.

19.

Efforts by Walden Security and officials with the Marshals Service's Northern District of Mississippi office to contact the Marshals Service Office of Court Security Office to determine why the Marshals Service reneged on its approval were unsuccessful. Davis was never provided a written explanation as to why his employment as the District Supervisor was not approved. Rather, Woodfin was informed by Acting Assistant Director of Judicial Security Tom Wight that the Marshal Service felt that Walden Security could find "a more qualified candidate" for the position (which was contrary to the terms of the contract and applicable regulations) but refused to give Woodfin any further information. Davis received written notification of the Marshal Service's "non-approval" via a letter sent by Dick Wong of Walden Security on January 15, 2016. (Walden notification, Exhibit "C" hereto) The letter also verifies that Davis was on the Walden Security payroll since January 5, 2016 and that Davis would be paid for the time he "spent in transition with District Supervisor Williams."

20.

Davis did not receive a written notification from OPM or the Marshals Service as to any finding as to his lack of qualifications or "unsuitability" for the position and the reasons therefor, including information regarding Davis's right to appeal or challenge the suitability determination as required by 5 CFR Section 731. Davis was also not informed as to any other grounds or reasons for his termination by the Marshals Service. In reality, Davis was uniquely qualified for the District Supervisor position and was otherwise suitable within the meaning of the applicable

11

regulations and contractual provisions. Davis' record of employment with the USMS established that he satisfied all job qualifications and the lack of any other matters which ultimately render him unsuitable.

21.

On January 21, 2016, Davis filed a complaint with the Office of Special Counsel (OSC) asserting that the USMS did not approve Walden Security's recommendation in retaliation for protected disclosures made while employed by the USMS. Afterwards, the OSC informed Davis that it was closing its investigation because it did not authority or jurisdiction over complaints filed by contract employees. (OSC Dismissal, Exhibit "D" hereto) On June 29, 2016, Davis filed his appeal of the OSC dismissal before the Merit Systems Protection Board and, simultaneously, filed a Complaint with the Office of the Inspector General (OIG), asserting that the Marshals Service wrongfully denied his employment with Walden Security and alleging that this denial was likely an act of "reprisal" for the matters involving former Chief Deputy Kelly York during the time that Davis was employed with the Marshals Service. In his Complaint filed with the OIG, Davis asserted that there was "no legal reason" for the denial of his employment because his job performance with the Marshal Service was "impeccable." Davis requested that the OIG investigate the matters surrounding the Marshals Service's denial of his employment with Walden Security as potential acts of reprisal and breach of the Marshals Service's contract with Walden Security and the federal regulations incorporated therein.

22.

After a period of discovery and the filing of position statements by Davis and the USMS, the Merit Systems Protection Board entered its Initial Decision adopting the position of the USMS and dismissing Davis' appeal of the OSC determination, finding that, although Davis

12

timely exhausted his administrative remedies before the OSC, the MSPB did not have jurisdiction to consider the merits of Davis' Complaint because he "was not an applicant for a position with an agency" within the meaning of 5 U.S.C. § 2302(a). (Initial Decision, Exhibit "E" hereto). The decision became final on November 23, 2016.

## CAUSES OF ACTION

Denial of Due Process (42 U.S.C.§ 1983 and Bivens)

23.

The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 22 above.

24.

The actions of the Marshals Service and its designees, the Offices of Personnel Management and Office of Court Security deprived the plaintiff of due process of law within the meaning of the 5th and 14th Amendments to the United States Constitution as the plaintiff had a Constitutionally protectable property and liberty interest in the suitability review, notice and opportunity to be heard provisions incorporated in the contract and the continued employment as a District Supervisor under the Walden Security contract -- employment which had been extended by Walden Security and accepted by the plaintiff subject to the provisions of the Walden Security contract and, in particular, the right of the Marshal Service to determine the plaintiff's "suitability" for employment in accordance with 5 CFR section 731. The defendants failure to make a "suitability" determination in accordance with contract requirements and 5 CFR section 731 and Section H.9 of the contract and the failure, in particular, to provide written notification of the "unsuitability" determination, the particular basis therefor and the failure to

provide the plaintiff an opportunity to be heard as to the basis of the determination violated the plaintiff's right to due process.

## Breach of Contract

25.

The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 24 above.

26.

Under the terms of the Walden Security contract, the plaintiff was duly certified by Walden Security as qualified for the position of District Supervisor. The defendants were contractually obligated to undertake a background investigation for the purpose of determining the plaintiff's "suitability" for the position of district supervisor in accordance with the limited criteria set forth in 5 CFR Section 731.202. As a duly certified "qualified candidate" for the position of District Supervisor, the plaintiff was a third-party beneficiary to the Walden Security contract. Further, and in addition, the USMS functioned as Davis' "co-employer." The defendants breached the Walden Security contract in the following respects:

1. failing to make an appropriate "suitability" determination in accordance with 5 CFR section 731.202 and section C .5 of the Walden security contract;
2. denying the plaintiff's continued employment with Walden Security based upon the inappropriate determination that the plaintiff was not the "most qualified" applicant for the position;
3. failing to provide written notice to the plaintiff as to the basis of the denial of employment, including any alleged determination that the plaintiff was "unsuitable" for the position in accordance with the criteria delineated in 5 CFR section 731.202;

4. failing to advise the plaintiff in writing as to his rights to contest any alleged bases for a determination that the plaintiff was "unsuitable" for the position of district supervisor as required by 5 CFR section 731.302.
5. terminating Davis' employment under the Walden Security contract for reasons not permitted under the subject contract and applicable federal regulations.

27.

The defendants breach of the Walden Security contract has proximately caused economic and non-economic damages to the plaintiff in the form of lost wages, pain and suffering and future wages and benefits.

Reprisal and Whistleblower

28.

The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 above.

29.

The plaintiff, as a former employee of the USMS, engaged in protected activity under the Federal Whistleblower provisions, (5 U.S.C. §2302 (b) (B)), in the form of undertaking complaints of activities that were not in compliance with existing contracts and regulations and participating as a witness in internal Department proceedings alleging wrongful conduct on the part of Department officials, including former Chief Deputy York. The failure of the defendants to provide written bases of his determination that the defendant was "unsuitable" for the position of District Supervisor under the Walden Security contract is circumstantial proof that the true bases of the denial of employment was due to the plaintiff's protected activity as a Department employee in violation of the federal Whistleblower provisions. The USMS required that Davis be

terminated from his employment under the Walden Security contract (after first being approved) as an act of retaliation and reprisal for his protected activities while previously employed by USMS.

<u>Claims for relief</u>

30.

Based upon the foregoing, the plaintiff respectfully requests compensatory damages in the amount of $500,000, including past wages, future wages, benefits and emotional and other non-economic damages, reinstatement of employment under the Walden Security contract as the District Supervisor for the Northern District of Mississippi CSO program, and a separate award of his attorneys fees and costs incurred in this matter. The plaintiff would also request any other relief which the court may find warranted in the premises.

THIS, the ___th day of _____, 2017.

Respectfully submitted,

CLAYTON O'DONNELL PLLC
1300 ACCESS ROAD, SUITE 200
P.O. Drawer 676
Oxford, MS 38655
Telephone: (662) 234-0900
Facsimile: (662) 234-3557

/s/ David D. O'Donnell
**DAVID D. O'DONNELL, MSB #3912**
*Attorney for Jeff Davis, plaintiff*